Slip Op. 14-160

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PAPIERFABRIK AUGUST KOEHLER AG**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **APPLETON PAPERS INC.**, <br><br> Defendant-Intervenor. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 11-00147 |

**OPINION**

[Affirming a remand redetermination by the U.S. Department of Commerce in response to a court order in litigation contesting the final results of an administrative review of an antidumping duty order on certain lightweight thermal paper from Germany]

Date: December 31, 2014

*F. Amanda DeBusk*, Hughes Hubbard & Reed, LLP, of Washington, DC, for plaintiff Papierfabrik August Koehler SE. With her on the brief were *Matthew R. Nicely*, *Eric S. Parnes*, and *Robert L. LaFrankie*.

*Joshua E. Kurland*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant United States. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Jessica M. Link*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Daniel L. Schneiderman* and *Gilbert B. Kaplan*, King & Spalding LLP, of Washington, DC, argued for defendant-intervenor Appvion, Inc.

Stanceu, Chief Judge: In this case, plaintiff Papierfabrik August Koehler SE ("Koehler") contested a final determination ("Final Results") that the International Trade Administration,

U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude the first administrative review of an antidumping duty order on certain lightweight thermal paper from Germany (the "subject merchandise").[1] *See Lightweight Thermal Paper From Germany: Notice of Final Results of the First Antidumping Duty Administrative Review*, 76 Fed. Reg. 22,078, 22,079 (Int'l Trade Admin. Apr. 20, 2011) ("*Final Results*"). The first administrative review period covers entries of subject merchandise made from November 20, 2008 through October 31, 2009 (the "period of review" or "POR"). *Id.*

Before the court is the redetermination pursuant to remand ("Remand Redetermination") Commerce issued in response to the court's order in *Papierfabrik August Koehler AG v. United States*, 38 CIT __, 971 F. Supp. 2d 1246 (2014) ("*Papierfabrik I*"). *Final Results of Redetermination Pursuant to Court Remand* (June 23, 2014), ECF No. 104-1 ("*Remand Redetermination*"). The court will affirm the Remand Redetermination.

## I. BACKGROUND

The court's prior opinion provides background on this case, which is supplemented herein. *Papierfabrik I*, 38 CIT at __, 971 F. Supp. 2d at 1247-49. Koehler is a German producer and exporter of lightweight thermal paper and Koehler America, Inc. is an affiliated U.S. distributor. Compl. ¶¶ 3-4 (June 3, 2011), ECF No. 6. Koehler was the only producer/exporter Commerce examined in the first review. *Final Results*, 76 Fed. Reg. at 22,079.

During the first administrative review, Koehler reported having made rebates to its customers, on monthly, quarterly, and annual bases, in selling the foreign like product in its

---

[1] During the course of the litigation, Papierfabrik August Koehler AG ("Koehler") changed from an "AG" to an "SE" corporate form. First Am. Compl. 1 n.1 (May 20, 2013), ECF No. 83. Koehler America, Inc., previously a plaintiff in this action, was terminated as a party on May 20, 2013. *See* Order (May 20, 2013), ECF No. 82.

home market of Germany. *Koehler's First Supplemental Sections A–C Questionnaire Resp.* 15-16 (Apr. 15, 2010) (Pub. Admin.R.Doc. No. 44) (Conf. Admin.R.Doc. No. 10) ("*Koehler's First Supplemental Questionnaire Resp.*"). For the preliminary results of the review ("Preliminary Results"), Commerce made downward adjustments to the home market sales prices for all of the reported rebates when determining the normal value of Koehler's subject merchandise according to Koehler's home market sales. *Lightweight Thermal Paper From Germany: Notice of Preliminary Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 77,831, 77,835-36 (Int'l Trade Admin. Dec. 14, 2010) ("*Prelim. Results*"). Commerce preliminarily assigned Koehler a *de minimis* antidumping duty margin. *Id*. at 77,837.

In the Final Results, published on April 20, 2011, Commerce continued to adjust the home market sales prices for Koehler's reported quarterly and annual rebates but did not adjust the sales prices to account for any rebate that Koehler paid as a "monatsbonus," i.e., monthly rebate. *Final Results,* 76 Fed. Reg. at 22,079; *Issues & Decision Mem. for the Final Results of the First Admin. Review of the Antidumping Duty Order on Lightweight Thermal Paper from Germany* 21, A-428-840, ARP 10-09(Apr. 13, 2011) (Pub. Admin.R.Doc. No. 109), *available at* http://enforcement.trade.gov/frn/summary/GERMANY/2011-9574-1.pdf (last visited Dec. 23, 2014) ("*Decision Mem.*"). Commerce assigned a 3.77% weighted-average antidumping duty margin to Koehler. *Final Results*, 76 Fed. Reg. at 22,079.

In this action, plaintiff claimed that the Department's decision not to make downward adjustments for the monthly rebates was unlawful. First Am. Compl. ¶¶ 24-25 (May 20, 2013), ECF No. 83 ("Am. Compl."). Plaintiff also claimed that Commerce impermissibly denied Koehler an opportunity to respond to certain correspondence between U.S. Senators and

Representatives and the Secretary of Commerce that Commerce placed on the record on the last day of the administrative review proceeding.[2] Am. Compl. ¶¶ 22-23.

In *Papierfabrik I*, the court held the Final Results unlawful, construing the governing regulations to preclude Commerce from disallowing adjustments to home market prices for the monthly rebates in the circumstances presented. *Papierfabrik I*, 38 CIT at __, 971 F. Supp. 2d at 1250-55. Because the court granted plaintiff's requested relief based on that holding, the court did not reach the question of whether Commerce must reopen the record to allow Koehler to comment on the congressional correspondence. *Id.* at __, 971 F. Supp. 2d at 1258-59. The court ordered Commerce to reach a new determination upon remand that conformed to the court's opinion and to redetermine Koehler's margin as necessary. *Id.* at __, 971 F. Supp. 2d at 1259.

Commerce filed the Remand Redetermination with the court on June 23, 2014. *Remand Redetermination* 1. In the Remand Redetermination, Commerce recognized downward adjustments to Koehler's home market sales prices to account for the monthly rebates. *Id.* at 4-5. Commerce recalculated Koehler's dumping margin from the 3.77% of the Final Results to 0.03%, which qualifies as a *de minimis* margin. *Id.* at 5.

On July 23, 2014, plaintiff and defendant-intervenor Appvion, Inc. ("Appvion") each filed comments on the Remand Redetermination.[3] Pl.'s Comments on Final Results of

---

[2] The correspondence involved in this issue is a March 30, 2011 letter to then-Commerce Secretary Gary Locke co-signed by five members of the U.S. Congress and Secretary Locke's individual responses to the letter. *See Mem. to the File re: Correspondence from U.S. Congressmen* (Pub. Admin.R.Doc. No. 107) (Apr. 13, 2011). On April 8, 2011, Secretary Locke sent each member a reply letter stating that the Department was considering whether to make adjustments for "certain reported rebates" in the Department's final determination. *Letter to Rep. Michael Turner from Gary Locke* (Pub. Admin.R.Doc. No. 102); *Letter to Rep. Reid Ribble from Gary Locke* (Pub. Admin.R.Doc. No. 103); *Letter to Senator Rob Portman from Gary Locke* (Pub. Admin.R.Doc. No. 104); *Letter to Senator Sherrod Brown from Gary Locke* (Pub. Admin.R.Doc. No. 105); *Letter to Senator Herb Kohl from Gary Locke* (Pub. Admin.R.Doc. No. 106).

Redetermination Pursuant to Ct. Remand, ECF No. 106 ("Koehler's Comments"); Def.-intervenor's Comments on the Remand Redetermination, ECF No. 108 ("Appvion's Comments"). Defendant replied to these comments on August 14, 2014. Def.'s Resp. to Comments Regarding Remand Results, ECF No. 113 ("Def.'s Resp."). Plaintiff fully supports the Remand Redetermination. Koehler's Comments 1, 3. While noting that Commerce complied with the court's decision under protest, defendant asks that the court affirm the Remand Redetermination. Def.'s Resp. 2 ("The Court should affirm the remand results because, as we demonstrate below, Commerce has complied with the Court's opinion and order, and its determination is supported by substantial evidence and in accordance with law."). Appvion disagrees with the court's holding in *Papierfabrik I* that the Department's disallowance of the monthly rebates was based on an impermissible interpretation of the governing regulation. Appvion's Comments 1. Further, Appvion argues that the court must reject the Remand Redetermination on the ground that Commerce violated 19 C.F.R. § 351.401(g) by failing to consider whether Koehler's allocation of the monthly rebates to a single product that Koehler sold in the home market resulted in inaccuracies or distortion. *Id*.

## II. Discussion

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a, including an action contesting the final results of an administrative review that Commerce issues under section 751

---

[3] Defendant-intervenor changed its name from Appleton Papers Inc. to Appvion, Inc. ("Appvion") during the course of this litigation. *See Letter to Clerk of the Court Re: Papierfabrik AG v. United States, Ct. No. 11–00147* (June 21, 2013), ECF No. 84.

of the Tariff Act, 19 U.S.C. § 1675(a).[4]  When reviewing the final results of an administrative review, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

A.  The Remand Redetermination Reaches a Correct Result Under the Department's Regulations

*Papierfabrik I* rejected the Department's conclusion in the *Final Results* that the monthly rebates should be disallowed because they were not "legitimate" rebates.  That conclusion relied on reasoning the court considered erroneous and findings the court deemed irrelevant.  *See Papierfabrik I*, 38 CIT at __, 971 F. Supp. 2d at 1250-54.  The court ruled irrelevant the Department's findings that Koehler had failed to demonstrate that the monthly rebates were made according to a rebate "program" and that its customers had prior knowledge of the rebate or a rebate program.  *Id.* at __, 971 F. Supp. 2d at 1252 (citing *Decision Mem.* 19).  The court explained that the applicable regulations did not condition a downward adjustment on the existence of a "program" or whether a customer was aware of the terms of a rebate at the time of sale. *Id.* at 1256-57.

The court based its holding in *Papierfabrik I* on the plain language of 19 C.F.R. § 351.401(c), which provides in pertinent part that "[i]n calculating . . . normal value (where normal value is based on price), the Secretary will use a price that is net of any price adjustment, as defined in § 351.102(b) . . . ."  In § 351.102(b), the Department's regulations provide that "'[p]rice adjustment' means any change in the price charged for the subject merchandise or the

---

[4] All statutory citations herein are to the 2006 edition of the United States Code and all citations to regulations are to the 2010 edition of the Code of Federal Regulations.

foreign like product, such as discounts, rebates, and post-sale price adjustments, that are [*sic*] reflected in the purchaser's net outlay." 19 C.F.R. § 351.102(b)(38).

The court noted that Commerce found, both impliedly and expressly, that Koehler made the monthly rebates at issue in its sales of the foreign like product in its home market. *Papierfabrik I*, 38 CIT __, 971 F. Supp. 2d at 1251. The Department's own findings, as stated in the issues and decision memorandum accompanying the Final Results, caused the court to conclude that Commerce was required to recognize the monthly rebates as "price reductions" that were "reflected in the purchaser's net outlay" within the meaning of the Department's regulations. *Id*. at __, 971 F. Supp. 2d at 1251-52.

In the Remand Redetermination, Commerce described the court's holding as follows: "The court held that the Department's decision to disallow an adjustment to Koehler's normal value for its monthly home market rebates ('monatsbonus') was unsupported by law because the governing regulations did not give the Department the discretion not to allow for such an adjustment." *Remand Redetermination* 1 (footnote omitted). Commerce added that "[w]hile we respectfully disagree with the Court's finding, based on the Court's reasoning, we find that there is no alternative but to alter our *AR1* [first administrative review] *Final Results* and allow Koehler's monthly home market rebate adjustment on remand." *Remand Redetermination* 4-5. Commerce further explained that:

> [T]he court stated that "the regulations do not merely 'allow,' but require, Commerce to treat these rebates as post-sale price adjustments," and that "Commerce lacked the discretion not to recognize a reduction in the purchaser's net outlay for the foreign like product that satisfied the definition of a 'price adjustment' in § 351.102(b)(38). 19 C.F.R. § 351.40l(c)."

*Remand Redetermination* 9-10 (footnote omitted).

The court will affirm the Department's decision on remand to recognize the monthly rebates as price adjustments to home market sales of the foreign like product. Commerce complied with the court's remand order, correctly reasoning that its own regulations, as construed by the court, did not allow it to refuse to recognize the monthly rebates as downward price adjustments.

B.  The Court Rejects Appvion's Arguments in Opposition to the Remand Redetermination

In the Final Results, Koehler reported that during the POR it issued monthly rebates for home market sales of only one lightweight thermal paper product, "KT 48 F20." *Koehler's First Supplemental Questionnaire Resp.* 17; *Koehler's Second Supplemental Sales Questionnaire Resp.* 9 (Aug. 5, 2010) (Pub. Admin.R.Doc. No. 71) (Conf. Admin.R.Doc. No. 24) ("*Koehler's Second Supplemental Questionnaire Resp.*"); *Koehler's Third Supplemental Sales Questionnaire Resp.* 2 (Nov. 15, 2010) (Pub. Admin.R.Doc. No. 78) (Conf. Admin.R.Doc. No. 27) ("*Koehler's Third Supplemental Questionnaire Resp.*"). Record documents indicate that the rebate was calculated as a percentage of the total monthly sales of KT 48 F20 that were made to an individual customer, that the monthly calculation resulted in issuance of a credit to that customer for the calculated amount, and that the rebate percentage generally varied from month to month during the POR. *See Koehler's First Supplemental Questionnaire Resp.*, Ex. S-14 (conf. version) (email communications concerning rebates); *Koehler's Second Supplemental Sales Questionnaire Resp.* 9; *Koehler's Third Supplemental Sales Questionnaire Resp.*, Exs. 1, 2 (conf. version) (sample credits).

In comments on the draft version of the Remand Redetermination, Appvion argued that Commerce should allocate the amount of the monthly rebates across all sales of the foreign like product to the customer during the particular month rather than only to sales of KT 48 F20.

*Appvion's Comments on the Draft Remand Redetermination* 9-12 (May 23, 2014) (Pub. Remand Admin.R.Doc. No. 13). In the final version of the Remand Redetermination, Commerce rejected Appvion's suggested reallocation and recognized the monthly rebates as Koehler had reported them, i.e., by making downward adjustments only to the prices paid for KT 48 F20. *Remand Redetermination* 9.

Appvion opposes the Remand Redetermination, arguing that the redetermination misinterpreted the court's remand order in *Papierfabrik I* by erroneously concluding that Commerce lacked the authority to reallocate the rebates. Appvion's Comments 1, 4-5. Appvion contends that Commerce erroneously concluded it lacked discretion under the court's order to reallocate the rebates to address what Appvion alleges is "manipulation" by Koehler in applying the monthly rebates to KT 48 F20 solely to reduce the dumping margin. *Id.* at 5-7. Next, Appvion contends that in the Remand Redetermination Commerce improperly failed to consider whether the allocation methodology used by Koehler resulted in "inaccuracies or distortions," contrary to the requirement of 19 C.F.R. § 351.401(g). *Id.* at 8-11. Seeking a second remand, Appvion argues that Commerce has authority under 19 C.F.R. § 351.401(g) to reallocate the monthly rebates in order to "prevent manipulation," that the court's decision in *Papierfabrik I* did not hold otherwise, and that Commerce should reallocate Koehler's monthly rebates to all sales of the foreign like product made to the relevant home market customer during the month. *Id.* at 11. The court concludes that the Department's decision not to reallocate the monthly rebates was lawful and, accordingly, that a second remand is not warranted.

The issue of whether the rebates should be recognized as applying only to sales of KT 48 F20 or reallocated to a wider group of home market sales was not raised previously in this

litigation and, therefore, was not addressed by the court in *Papierfabrik I*.[5] It follows that Commerce could not correctly have interpreted the court's opinion and order in *Papierfabrik I* to limit its discretion in resolving that issue on remand. Nor is warranted to conclude that Commerce believed it was limited by the court's ruling in deciding the issue. Although certain language in the Remand Redetermination, when read in isolation, could be construed to indicate that Commerce believed the court's ruling did not allow it to address "manipulation" by reallocating the monthly rebates, a reading of the entire Remand Redetermination in context casts some doubt on such a construction.

In the Remand Redetermination, Commerce clarified that it had not considered the reallocation issue in the Final Results. *Remand Redetermination* 9 ("[B]ecause we disallowed Koehler's rebates in their entirety, we did not address petitioner's arguments at that time [i.e., during the Final Results]."). Commerce proceeded to address the allocation issue on the merits and came to its own determination on this issue. *Id.* ("Thus, we address these comments now in the first instance."). Quoting from the court's opinion, Commerce correctly understood that the court in *Papierfabrik I* held that in the situation presented Commerce was not authorized under 19 C.F.R. § 351.401(c) and § 351.102(b)(38) to refuse to recognize the monthly rebates as post-sale price adjustments. *Remand Redetermination* 9-10. The sentence in the Remand Redetermination that follows this discussion reads as follows: "Therefore, under this

---

[5] Although Appvion raised this allocation challenge during the administrative proceeding, Commerce did not address the question in the Final Results because Commerce had chosen not to adjust home market sales prices to account for the monthly rebates. *See Issues & Decision Mem. for the Final Results of the First Admin. Review of the Antidumping Duty Order on Lightweight Thermal Paper from Germany* 23, A-428-840, ARP 10-09 (Apr. 13, 2011) (Pub. Admin.R.Doc. No. 109), *available at* http://enforcement.trade.gov/frn/summary/GERMANY/2011-9574-1.pdf (last visited Dec. 23, 2014); *Final Results of Redetermination Pursuant to Court Remand* 9 (June 23, 2014), ECF No. 104-1 ("*Remand Redetermination*").

interpretation of 19 CFR 351.102(b)(38) and 351.401(c), the Department does not have the discretion to consider the legitimacy of, and therefore the possible manipulation of the dumping margin through, such rebates." *Id.* at 10 (footnote omitted). If read apart from the related discussion in the Remand Redetermination, this sentence might be interpreted to mean that Commerce considered the court to have limited the Department's discretion to address the question of "manipulation" through reallocation of the rebates. Nevertheless, the discussion in the Remand Redetermination that follows consists of two paragraphs in which Commerce presented its reasons for not performing the reallocation urged by Appvion. *Id.* at 9-10. None of the reasons provided pertains to the court's opinion and order in *Papierfabrik I*. Moreover, Commerce grounded its reasoning in 19 C.F.R. § 351.401(g) rather than the two regulatory provisions it mentioned in the sentence in question, 19 C.F.R. § 351.401(c) and § 351.102(b)(38). *Id.* If Commerce considered itself bound by the court's order in addressing the reallocation issue, it did not unambiguously make that point in the Remand Redetermination. Commerce instead decided as a matter of first impression the issue Appvion had raised with respect to allocation. In any event, the court concludes that Commerce did so in a way that was within its regulatory discretion and supported by substantial record evidence.

According to Appvion's interpretation of 19 C.F.R. § 351.401(g), Commerce did not satisfy the requirement in its regulations to determine whether Koehler's allocation of the monthly rebates to only one product, KT 48 F20, resulted in "inaccuracies or distortion" before adopting that allocation. Appvion's Comments 8 (arguing that 19 C.F.R. § 351.401(g)(1) "mean[s] that Commerce *may not* accept a proposed allocation unless it first finds that the allocation does not cause inaccuracies or distortion.") (emphasis in original). The Department's regulations provide that "[t]he Secretary may consider allocated expenses and price adjustments

when transaction-specific reporting is not feasible, provided the Secretary is satisfied that the allocation method used does not cause inaccuracies or distortions." 19 C.F.R. § 351.401(g)(1). The regulations further provide that "[a]ny party seeking to report an expense or a price adjustment on an allocated basis must demonstrate to the Secretary's satisfaction that the allocation is calculated on as specific a basis as is feasible, and must explain why the allocation methodology used does not cause inaccuracies or distortions." *Id.* § 351.401(g)(2). The regulations also state that in "determining the feasibility of transaction-specific reporting or whether an allocation is calculated on as specific a basis as is feasible, the Secretary will take into account the records maintained by the party in question in the ordinary course of its business, as well as such factors as the normal accounting practices in the country and industry in question and the number of sales made by the party during the period of investigation or review." *Id.* § 351.401(g)(3).

The court disagrees with Appvion's contention that Commerce failed to consider whether Koehler's directing the monthly rebates only to home market sales of KT 48 F20 caused "inaccuracies or distortions" within the meaning of 19 C.F.R. § 351.401(g)(1) and (2). Because of the nature of the express findings Commerce made in the Remand Redetermination, the court must consider Commerce to have decided any question of whether Koehler's "allocation," i.e., its application of the rebate only to KT 48 F20, created an inaccuracy or a distortion. Commerce identified an inaccuracy that would result were it to adopt Appvion's proposed alternative, finding that that "[a]pplying the total rebate amounts to all sales as suggested by petitioner would be unrelated to Koehler's actual commercial practices . . . ." *Remand Redetermination* 11. Commerce noted that Koehler reported the rebate as being paid only on the KT 48 F20 product, *id.*, and record evidence consisting of commercial documents, including price lists and

communications to the customer, supports the finding that the monthly rebates were calculated each month based solely on sales of this product. *See Koehler's Sections B & C Questionnaire Resp.*, Ex. B-4 (Feb. 16, 2010) (Conf. Admin.R.Doc. No. 3) (price lists); *Koehler's First Supplemental Questionnaire Resp.*, Ex. S-14 (conf. version) (email communications); *Koehler's Third Supplemental Sales Questionnaire Resp.*, Exs. 1, 2 (conf. version) (sample credits).

Applying the requirement in § 351.401(g)(2) that the allocation be "calculated on as specific a basis as is feasible," Commerce justifiably found on the record evidence that "Koehler's reported allocation methodology is on as specific a basis as is feasible, based on how it [Koehler] tracks these rebates in its normal course of business," *Remand Redetermination* 11, and that Appvion's proposed alternative would be "less specific than currently reported," *id*. The record evidence demonstrating that Koehler granted the rebate only on sales of KT 48 F20 supports these findings.

Based on the record evidence concerning Koehler's monthly rebates, the court concludes that the implication of Appvion's argument is that Commerce was required to find "inaccuracy" and "distortion" in Koehler's decision to grant the rebate only on sales of the KT 48 F20 product. Appvion's argument appears to be directed to that decision, and Koehler's motivation for doing so, rather than to whether that decision was accurately reflected in those of Koehler's ordinary business records that were relevant to the "allocation" issue Appvion raised. Appvion argues that "[i]n this case, Koehler *arbitrarily* ascribed the rebate to sales of KT 48 F20, resulting in an *artificial* specificity," Appvion's Comments 9 (emphasis in original), that "had no commercial justification and was done solely to manipulate the margin calculations," *id*. Appvion submits that Commerce "should have reallocated the monthly credit amounts using the most specific methodology that would not result in 'inaccuracies or distortions,' *i.e.*, assigning the aggregate

rebate amount for each month to all sales of the foreign like product (including non-matching models) . . . ." *Id*.  This Commerce permissibly declined to do.

Nothing in the record evidence *compelled* Commerce to find "inaccuracy" or "distortion" in connection with Koehler's granting rebates only on the KT 48 F20 product.  On this record, the court finds nothing unreasonable in the Department's interpreting 19 C.F.R. § 351.401(g) so as not to require a reallocation of the monthly rebate amounts based on Appvion's notion of "inaccuracy" or "distortion."

Implying that it did not routinely apply its regulation as Appvion urged it to, Commerce stated that "we do not have any clear practice with respect to reallocating these rebates as suggested by petitioner."  *Id.*  The court need not, and does not, decide the question of whether Commerce could have reallocated the rebates as Appvion urged in its comments (and advocates before the court), had Commerce desired to do so.  It is sufficient that Commerce, in deciding against Appvion's proposed course of action, permissibly construed the pertinent regulations and reached relevant findings that were supported by record evidence, including Koehler's business records.  The court concludes, therefore, that a second remand is not warranted in this case.

### III. Conclusion

For the reasons stated in the foregoing, the court will affirm the Department's Remand Redetermination and enter judgment accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated:  December 31, 2014
	  New York, NY